| | |
|---|---|
| GINA BEMPKINS,<br><br>    Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1]<br><br>    Defendant. | CIVIL ACTION NO. 3:16-CV-01137<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

# REPORT AND RECOMMENDATION

This is an action brought under Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Gina Bempkins's claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.[2]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of former Acting Commissioner Carolyn W. Colvin.

[2] Although both parties agree that Bempkins challenges the denial of an application for benefits under Titles II and XVI, the record appears to indicate that Bempkins only brought the current claim under Title XVI. *Compare* (Doc. 12-2, at 26 ("[T]his is only a Title XVI claim . . . .")), *with* (Doc. 15, at 3 ("The Plaintiff, Gina Bempkins disputes the Social Security Administration's (SSA) denial of her claim for Social Security Disability (SSD) and Supplemental Security Income (SSI).")), *and* (Doc. 16, at 1 ("This is an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the Act).")). To that end, there is no information in the record as to whether or not Bempkins is insured for disability insurance benefits. *See* 42 U.S.C. § 423(a); 20 C.F.R. § 404.131. Nonetheless, out of an abundance of caution the Court will proceed as if Bempkins seeks benefits under both Titles II and XVI.

The matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is respectfully recommended that the Commissioner's decision be vacated and that the case be remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

**I. BACKGROUND & PROCEDURAL HISTORY**

On May 31, 2011, Ms. Bempkins protectively filed applications for benefits under Titles II and XVI of the Social Security Act asserting an onset date of April 1, 2008, at which time she was 42 years old.[3] (Doc. 1; Doc. 12-2, at 37; Doc. 15, at 4). Ms. Bempkins alleges that she became disabled due to the following impairments: back pain, bunion and foot pain, anger problems, insomnia, hand cramps, and fibromyalgia. (Doc. 12-3, at 2; Doc. 12-6, at 5). On September 2, 2011, Bempkins's claims were denied at the initial level of administrative review. (Doc. 12-3, at 10; Doc. 12-4, at 4-7). During the initial evaluation of Bempkins's claims, an adjudicator determined that her claims must be denied due to insufficient evidence after Bempkins failed to appear for a medical examination. (Doc. 12-4, at 4). Bempkins filed a timely request for a hearing before an administrative law judge ("ALJ") on October 26, 2011. (Doc. 12-4, at 8). Bempkins then appeared and testified at an administrative hearing before ALJ Therese A. Hardiman on July 11, 2012. (Doc. 12-3, at 15). Impartial vocational expert ("VE") Carmine Abraham also appeared at the hearing.

---

[3] Bempkins had previously filed several other applications for benefits under both Titles II and XVI that were denied for various reasons. (Doc. 12-2, at 25-26).

2

(Doc. 12-3, at 15). The ALJ denied Bempkins's claims in a written decision dated August 30, 2012, in which the ALJ concluded that Bempkins was capable of adjusting to a full range of work with certain nonexertional limitations for which there exists a significant number of jobs in the national economy. (Doc. 12-3, at 12-24). Bempkins requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review, which granted her request. (Doc. 12-3, at 30). On January 10, 2014, the Appeals Counsel vacated and remanded the ALJ's decision with instructions for the ALJ to further develop the record, including by obtaining a medical expert to opine on the nature and severity of Bempkins's impairments. (Doc. 12-3, at 30-32).

On remand, Bempkins again appeared and testified before ALJ Hardiman. Specifically, Bempkins testified at an administrative hearing on April 9, 2014 along with VE Karen Kane. (Doc. 12-2, at 25, 53-75). Bempkins was represented by counsel at the second ALJ hearing, as she has been throughout these proceedings. (Doc. 12-2, at 25, 53-75). In a written decision dated August 7, 2014, the ALJ denied Bemkins's claims once again upon finding that Bempkins was capable of adjusting to a full range of work with certain nonexertional limitations for which there exists a significant number of jobs in the national economy. (Doc. 12-2, at 22-38). On October 7, 2014, Bempkins again requested the Appeals Counsel to review the ALJ's decision. (Doc. 12-2, at 44-52). The Appeals Council denied her second request for review on April 15, 2016, thus affirming the ALJ's August of 2014 decision as the final decision of the Commissioner subject to judicial review by this Court. (Doc. 12-2, at 2-4).

Bempkins initiated this action by filing a complaint, through counsel, on June 14, 2016. (Doc. 1). In her complaint, Bempkins alleges that the ALJ's decision was "not

supported by substantial evidence and . . . contrary to law and regulation." (Doc. 1, ¶ 7). As relief she requests that this Court reverse the ALJ's decision and award benefits, or in the alternative, remand this case for a new administrative hearing. (Doc. 1, at 3-4). After service of the complaint, the Commissioner filed an answer together with a certified transcript of the entire record of the administrative proceedings on September 12, 2016. (Doc. 11; Doc. 12). In her answer, the Commissioner asserts that the ALJ's findings of fact are supported by substantial evidence and that the decision was made in accordance with the law and regulations. (Doc. 11, ¶ 9). This matter has been fully briefed by the parties and is now ripe for decision. (Doc. 15; Doc. 16).

## II. STANDARD OF REVIEW

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment[4] that makes it impossible to do his or her previous work or any other substantial gainful activity[5] that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social

---

[4] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[5] "Substantial gainful activity" is defined as "work that—(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

4

Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[6] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[7] and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a) (effective June 12, 2014, through Apr. 19, 2015); 20 C.F.R. § 416.912(a) (effective June 12,

---

[6] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[7] A claimant's RFC is the most a claimant can still do despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This assessment encompasses all of the claimant's medically-determinable impairments, including those that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ assesses the claimant's RFC before proceeding from step three to step four in the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The RFC is then used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

2014, through Apr. 19, 2015).[8] Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) (effective June 12, 2014, through Apr. 19, 2015); 20 C.F.R. § 416.912(f) (effective June 12, 2014, through Apr. 19, 2015).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict

---

[8] The versions of 20 C.F.R. § 404.1512 and 20 C.F.R. § 416.912 in effect at the time the ALJ issued her second decision in this case have been amended during the pendency of this action. Section (a) of these regulations remains virtually unchanged. *See* 20 C.F.R. § 404.1512(a) (effective Mar. 27, 2017); 20 C.F.R. § 416.912(a) (effective Mar. 27, 2017). However, section F has been redesignated as section (b)(3). *See* 20 C.F.R. § 404.1512(b)(3) (effective Mar. 27, 2017); 20 C.F.R. § 416.912(b)(3) (effective Mar. 27, 2017). In this opinion, the Court cites to the regulations relied on by the ALJ when she evaluated Bempkins's claim on remand. In any event, the application of the new version of these provisions would not affect the analysis of this case.

created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Bempkins is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### III. THE ALJ'S DECISION

In her August of 2014 decision denying Bempkins's applications for benefits, the ALJ assessed Bempkins's case at each step of the five-step sequential evaluation process before concluding that Bempkins was "not disabled" because she could perform work that exists in the national economy. (Doc. 12-2, at 22-38).

At step one of the sequential evaluation process, the ALJ found that Bempkins had not engaged in substantial gainful activity since filing her application for benefits on May 31, 2011, or for several years beforehand. (Doc. 12-2, at 28).

At step two, the ALJ found that the medical evidence of record established the presence of the following medically-determinable severe impairments during the relevant period: depressive disorder, mood disorder, and posttraumatic stress disorder. (Doc. 12-2, at 28). The ALJ also considered several other impairments alleged by Bempkins, but determined that none of these alleged impairments qualified as medically-determinable severe impairments as defined in the regulations. (Doc. 12-2, at 28-29).

At step three, the ALJ found that during the relevant period, Bempkins did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 that was in effect on the date the ALJ issued her decision. (Doc. 12-2, at 30-32). Specifically, the ALJ determined that the severity of Bempkins's mental impairments, considered in combination, did not meet listings 12.04 or 12.06. (Doc. 12-2, at 30-32).

Between steps three and four, the ALJ assessed Bempkins's RFC. (Doc. 12-2, at 32-37). Bempkins alleged that her impairments caused symptoms such as chronic pain, insomnia, and hand cramps. (Doc. 12-2, at 28). After examining her statements and the medical evidence, the ALJ found that Bempkins's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely credible. (Doc. 12-2, at 35). The ALJ reviewed Bempkins's medical record and treatment history, including mental health therapy. (Doc. 12-2, at 33-37). In doing so, the ALJ considered and

weighed medical opinions by the following sources: treating physician Elizabeth A. Gernhardt ("Dr. Gernhardt"), nontreating consultative examiner John F. Callahan ("Dr. Callahan"), nonexaming state agency medical consultant John Shane ("Dr. Shane"), and nonexamining independent medical consultant Lee Besen ("Dr. Besen"). (Doc. 12-2, at 28-30, 33-35; Doc. 12-8, at 41-73; Doc. 12-9, at 2-12; Doc. 12-10; Doc. 12-11, at 2-37, 47-86; Doc. 12-12, at 2-58, 78-90). Finally, the ALJ also considered Bempkins's global assessment of functioning ("GAF") scores and a third-party statement from Bempkins's mother. (Doc. 12-2, at 36-37).

Dr. Gernhardt has been Bempkins's primary care physician since approximately July of 2000. (Doc. 12-8, at 41-73). The ALJ noted that Dr. Gernhardt prepared two assessments of Bempkins, one in February of 2010 and a second in September of 2011. (Doc. 12-2, at 35; Doc. 12-8, at 44-48; Doc. 12-10, at 7-8). The ALJ did not address the first assessment because it had already been considered as part of the record in one of Bempkins's earlier disability claims. (Doc. 12-2, at 35). As for the second assessment, the ALJ claimed that Dr. Gernhardt opined that Bempkins had "substantially less than a sedentary level of function."[9] (Doc. 12-2, at 35 (citing Doc. 12-10, at 7-8)). The ALJ also considered Dr. Gernhardt's treatment notes between August of 2011 and January of 2014, which contained normal findings and listed Bempkins's subjective complaints. (Doc. 12-2, at 30, 33-34). The ALJ deemed both Dr. Gernhardt's treatment notes and her second assessment to be poorly supported because they did not contain "any actual objective deficits." (Doc. 12-2, at 30, 33-

---

[9] Specifically, Dr. Gernhardt opined that Bempkins had no limitations sitting and could stand and walk for more than six hours per day, but could only lift or carry two-to-three pounds and had several other postural limitations. (Doc. 12-10, at 7-8).

35). Accordingly, the ALJ afforded Dr. Gernhardt's opinion only limited weight. (Doc. 12-2, at 35).

Dr. Callahan evaluated Bempkins on August 25, 2011. (Doc. 12-9, at 2-12). In his report, Dr. Callahan opined that Bempkins could lift or carry up to ten pounds occasionally, stand or walk for one-to-two hours, and sit for three-to-four hours in a given day, while also noting that Bempkins had additional postural, physical, and environmental limitations. (Doc. 12-9, at 6-7). The ALJ concluded that Dr. Callahan relied too heavily on Bempkins's own subjective complaints in light of the unremarkable objective findings. (Doc. 12-2, at 35). Accordingly, the ALJ also afforded Dr. Callahan's opinion just limited weight. (Doc. 12-2, at 35).

The ALJ also took into account the opinions of two nonexamining consultants, Dr. Shane and Dr. Besen. Dr. Shane diagnosed Bempkins as primarily suffering from degenerative disc disease ("DDD") of the cervical and lumbar spine, and opined that she could perform a range of sedentary work with postural, push/pull, and environmental limitations. (Doc. 12-2, at 29; Doc. 12-11, at 31-37). The ALJ discounted Dr. Shane's opinion because he did not examine Bempkins in person, did not cite laboratory findings or other evidence to support his conclusions, and relied on Bempkins's subjective complaints. (Doc. 12-2, at 29-30). Specifically, the ALJ noted that Dr. Shane's diagnosis of DDD was not supported by the record and inconsistent with imaging of Bempkins's cervical spine. (Doc. 12-2, at 29-30). The ALJ therefore accorded the opinion little weight. (Doc. 12-2, at 29).

The ALJ also propounded interrogatories to Dr. Besen after her first decision was remanded by the Appeals Council. (Doc. 12-2, at 30; Doc. 12-12, at 78-90). Dr. Besen

concluded that Bempkins retained the capacity to perform light work with reduced standing, sitting, and walking, as well as postural and environmental limitations. (Doc. 12-2, at 30; Doc. 12-12, at 78-90). The ALJ again discounted this opinion due to the fact that Dr. Besen did not examine Bempkins in person and did not have objective findings such as imaging or laboratory results to support his conclusions. (Doc. 12-2, at 30). Dr. Besen's opinion thus also was accorded little weight. (Doc. 12-2, at 30).

Based on her consideration of the above medical opinions and of the other relevant evidence of record, the ALJ assessed that, during the relevant period, Bempkins had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling. She can never climb on ladders and must avoid vibration and hazards. She is limited to simple routine tasks with low stress as defined as occasional decision making and only occasional changes in the work setting. She is to have no interaction with the public and only occasional interaction with coworkers.

(Doc. 12-2, at 32-33).

At step four of the sequential evaluation process, the ALJ found that Bempkins had no past relevant work. (Doc. 12-2, at 37).

At step five, the ALJ considered Bempkins's RFC, age (younger individual), education (high school or above), and work experience to ultimately conclude that jobs existed in significant numbers in the national economy that Bempkins could perform. (Doc. 12-2, at 37-38). The ALJ based her assessment on testimony by VE Kane. (Doc. 12-2, at 38, 67-75). In response to a hypothetical question that mirrors the RFC above, VE Kane testified that an individual of the same age, education, work experience, and assessed RFC as Bempkins could adjust to work in representative occupations such as video monitor—

surveillance (DOT #379.367-010), office helper (DOT #239.567-010), order filler (DOT #209.587-034), and laundry worker (DOT #361.685-018). (Doc. 12-2, at 38, 68-69). VE Kane further testified that in the Northeastern Pennsylvania regional economy there are approximately: 200 jobs as a video monitor; 400 jobs as an office helper; 400 jobs as an order filler; and 200 jobs as a laundry worker. (Doc. 12-2, at 38, 68-69). Accordingly, the ALJ concluded that Bempkins was not disabled because she could perform work that exists in significant numbers in the regional and national economies despite the limiting effects of her impairments. (Doc. 12-2, at 38).

## IV. ANALYSIS

Bempkins alleges two errors in arguing that the ALJ's decision denying her applications for benefits is not supported by substantial evidence: (1) that the ALJ improperly found that Bempkins could perform work at all exertional levels, and (2) that the ALJ failed to comply with the Appeals Council's remand order. (Doc. 15, at 9). As relief, Bempkins seeks reversal of the ALJ's decision or alternatively, a remand for a new administrative hearing. (Doc. 1, at 3-4).

### A. THE ALJ IMPROPERLY REJECTED ALL MEDICAL OPINIONS IN DETERMINING THAT BEMPKINS COULD PERFORM WORK AT ALL EXERTIONAL LEVELS

Bempkins primarily argues that the ALJ erred by failing to properly weigh the medical opinion evidence, which resulted in a flawed RFC assessment. (Doc. 15, at 9-14). In making the RFC determination, "the ALJ must consider all evidence before him." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted). Indeed, the regulations mandate that an ALJ "will evaluate every medical opinion . . . receive[d]." 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Burnett.*, 220 F.3d at 122 ("[T]he ALJ must review all of the pertinent medical evidence, explaining his conciliations and

rejections."); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[10] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

SSR 96-6p addresses the weight afforded to treating medical sources, such as Dr. Gernhardt. SSR 96-6p, 1996 WL 374180 (July 2, 1996).[11] SSR 96-6p notes that "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Because treating sources often have the closest ties to a claimant, their opinions are generally entitled to more weight. 20 C.F.R. § 404.1527(c)(2). Under certain circumstances, the medical opinion of a treating source may even be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996). A treating physician's opinion warrants controlling weight where the opinion is "well-

---

[10] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

[11] SSR 96-6p was published and became effective on July 2, 1996. Although since rescinded and replaced by SSR 17-2p, SSR 96-6p was in effect at the time the ALJ rendered her decision that is now before this Court.

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, a treating source's opinion may be rejected "only on the basis of contradictory medical evidence . . . ." *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). Thus, even if a treating source's medical opinion is not entitled to controlling weight, it still may be entitled to significant deference. *See* SSR 96-2p, 1996 WL 374188. Upon establishing that a treating source's opinion is not entitled to controlling weight, an ALJ must weigh the opinion "using all of the factors provided in 20 CFR 404.1527," which are also used for evaluating opinions by non-treating and non-examining medical sources. SSR 96-2p, 1996 WL 374188. These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the parties do not dispute that Dr. Gernhardt was Bempkins's lone treating source.[12] The ALJ accorded Dr. Gernhardt's opinion little weight after concluding that her opinion was not supported by objective findings. (Doc. 12-2, at 29-30, 35). Even if the lack of objective findings was a sufficient basis for the ALJ to determine that Dr. Gernhardt's

---

[12] A "treating source" is defined as a claimant's "own physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502 (effective June 13, 2011 through Mar. 26, 2017), 416.902 (effective June 13, 2011 through Mar. 26, 2017). An "ongoing treatment relationship" exists or existed if the claimant "see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." 20 C.F.R. §§ 404.1502 (effective June 13, 2011 through Mar. 26, 2017), 416.902 (effective June 13, 2011 through Mar. 26, 2017).

opinion was not entitled to controlling weight, the ALJ nonetheless fails to point to any specific medical evidence that outright contradicts Dr. Greenhardt's opinion.[13] *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("[A]n ALJ . . . may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments . . . ."). Moreover, it does not appear that the ALJ evaluated all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927 after determining that Dr. Gernhardt's opinion was not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-2p, 1996 WL 374188. Because the ALJ did not address the six factors provided in 20 C.F.R. §§ 404.1527 and 416.927 before determining that Dr. Gernhardt's opinion was only entitled to little weight, she rejected the opinion "for the wrong reasons." *Plummer*, 186 F.3d at 429; *see, e.g.*, *Ray v. Colvin*, Civ. No. 13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to 'give good reasons' for not crediting the opinion of a treating source upon consideration of the factors listed above."). *See generally Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("[T]he Secretary must 'explicitly' weigh all relevant, probative and available evidence."). Furthermore, as pointed out by Bempkins, the ALJ failed to consider all of the evidence in affording Dr. Gernhardt's opinion only limited weight by emphasizing the lack of laboratory results and objective testing while overlooking the evidence of Bempkins's limitation of motion and tenderness.

---

[13] In her brief, the Commissioner attempts to provide an *ex post facto* basis to reject the medical opinion evidence. (Doc. 16, at 17-18). However, it is the role of this Court to review the reasoning that the ALJ actually provided, rather than engage in its own independent analysis. *See SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001).

(Doc. 15, at 9, 14). Because it appears that the ALJ considered neither the 20 C.F.R. §§ 404.1527 and 416.927 factors nor all of the relevant evidence before determining that Dr. Gernhardt's opinion was only deserving of little weight, the ALJ's conclusion is not supported by substantial evidence.

Bempkins further alleges that the ALJ failed to account for the fact that all medical opinions appear to corroborate each other. (Doc. 15, at 12). Each of these medical opinion sources found that Bempkins was more limited than the ALJ ultimately concluded. (Doc. 12-2, at 28-30, 33-35; Doc. 12-8, at 41-73; Doc. 12-9, at 2-12; Doc. 12-10; Doc. 12-11, at 2-37, 47-86; Doc. 12-12, at 2-58, 78-90). Given that "consistency" is one of the factors to be evaluated under 20 C.F.R. §§ 404.1527 and 416.927, the ALJ's failure to consider the consistency among each of these medical opinions renders her evaluations of these opinions lacking in substantial evidence.

The ALJ's evaluation of the four medical source opinions indicates a broader problem in that it appears the ALJ impermissibly engaged in the lay evaluation of medical evidence. *See Burns v. Colvin*, 156 F. Supp. 3d 579, 588 (M.D. Pa. 2016) ("[A]n ALJ may not reject a supported treating source medical opinion with only lay interpretation of medical evidence."). Because the ALJ essentially rejected all medical opinions proffered, she could not rely on any contradictory and contemporaneous medical opinion as is needed to cast aside Dr. Gernhardt's treating source opinion. *See Burns*, 156 F. Supp. 3d at 588 ("[M]erely citing to contradictory medical evidence, as opposed to contradictory medical opinion, is insufficient."). Instead, the ALJ improperly rejected Dr. Gernhardt's opinion by substituting her own lay interpretation of the medical evidence. (Doc. 12-2, at 35); *see Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) ("The ALJ's rejection of Dr. Picciotto's

opinion that Brownawell has no ability to deal with work stresses and maintain concentration in a work environment was improperly based on an alleged inconsistency between Picciotto's treatment notes and his ultimate evaluation."); *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) ("The ALJ cannot, as he did here, disregard this medical opinion based solely on his own amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility." (quotation omitted)). The ALJ's decision to afford little weight to Dr. Gernhardt's opinion is without proper evidentiary support given that she likewise rejected all three other medical opinions.

Because Dr. Gernhardt's evaluation of the medical opinion evidence is not supported by substantial evidence, it is respectfully recommended that the Commissioner's decision be vacated and that the case be remanded.[14]

---

[14] In her brief, the Commissioner argues that any error in the ALJ's evaluation of opinion evidence should be deemed harmless because VE Kane testified that there were a substantial number of jobs in the national economy that could be performed at the sedentary level even with the additional postural, physical, and environmental limitations as those assessed for Bempkins. (Doc. 16, at 23-24). However, the ALJ noted that both Dr. Gernhardt and Dr. Callahan opined that Bempkins had less than a sedentary level of function. (Doc. 12-2, at 35). Furthermore, VE Kane also testified at the hearing that an individual would not be able to perform any jobs in the national economy if limited to lifting or carrying less than ten pounds occasionally or frequently, standing and walking less than two hours in an eight hour day, and sitting less than six hours in an eight hour day. (Doc. 12-2, at 74). These limitations that VE Kane stated would be prohibitive of finding employment in the national economy closely mirror Dr. Callahan's assessment of Bempkins's limitations as noted in his medical source statement dated August 25, 2011. (Doc. 12-9, at 6-7). Accordingly, it is far from clear that the ALJ's failure to properly weigh the medical opinion evidence was harmless error. *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover.").

17

B. REMAINING GROUNDS

Because the Court recommends remand on the above-stated grounds, it declines to address Bempkins's second ground for relief that the ALJ failed to comply with the Appeals Council's remand order. (Doc. 15, at 15). "A remand may produce different results on these claims, making discussion of them moot." *Burns*, 156 F. Supp. 3d at 598.

C. Remedy

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the Court concludes that it is necessary to further develop the record in the case at bar, the undersigned United States Magistrate Judge respectfully recommends that the decision of the Commissioner be vacated and that the case be remanded for further proceedings.

V. RECOMMENDATION

Based on the foregoing, it is recommended that the Commissioner's decision be **VACATED**, and that the case be **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence

pursuant to sentence four of 42 U.S.C. § 405(g). It is further recommended that the Clerk of Court be directed to **CLOSE** this case.

Dated: August 18, 2017

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GINA BEMPKINS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | CIVIL ACTION NO. 3:16-CV-01137<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

# NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 18, 2017**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                *s/ Karoline Mehalchick*
                **KAROLINE MEHALCHICK**
                **United States Magistrate Judge**